IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| RICHARD BARKER, *on behalf of the United States of America and the State of Georgia* | * * * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 4:12-CV-108 (CDL) |
| COLUMBUS REGIONAL HEALTHCARE SYSTEM, INC., THE MEDICAL CENTER, JOHN B. AMOS CANCER CENTER, REGIONAL ONCOLOGY LLC, THOMAS J. TIDWELL, and COLUMBUS RADIATION ONCOLOGY TREATMENT CENTER, | * * * * * | |
| Defendants. | * | |

O R D E R

Defendant Thomas J. Tidwell ("Tidwell") filed a motion to dismiss Plaintiff's Complaint against him (ECF No. 25). Tidwell argues that Plaintiff has not alleged his claims with sufficient specificity and that the present allegations fail to state a claim upon which relief may be granted. At this stage of the litigation, the Court must accept Plaintiff's factual allegations as true. The Court finds that those allegations are stated with sufficient particularity to put Tidwell on notice of the claims asserted against him. Moreover, when those allegations are accepted as true, they state a claim for relief

that is plausible on its face.  Accordingly, Tidwell's motion to dismiss must be denied.

## SUMMARY OF PLAINTIFF'S CLAIMS AGAINST TIDWELL

This *qui tam* action alleges that Tidwell submitted false claims to the federal government in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.  Specifically, Plaintiff contends that Tidwell's sale of his professional association, Tidwell Cancer Treatment Center ("Tidwell Cancer Center"), to Columbus Regional Healthcare System ("Columbus Regional") violated the Anti-Kickback Statute and the Stark Law.  Plaintiff also asserts that claims subsequently submitted to Medicare and Medicaid for services provided by Tidwell during the two-year period that Tidwell continued to practice radiation oncology in affiliation with Columbus Regional were false because they certified compliance with the Anti-Kickback Statute and the Stark Law.  Plaintiff also maintains that Tidwell submitted false claims to Medicare, Medicaid, and other federally funded health benefits programs for radiation therapy that he did not perform.  Tidwell contends that Plaintiff has not been specific enough in his First Amended Complaint and that this lack of specificity violates Federal Rule of Civil Procedure 9(b), which requires that claims brought under the False Claims Act must state with particularity the circumstances supporting the claims.  Tidwell also maintains that Plaintiff's claims are not

2

plausible and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

To evaluate Tidwell's motion, the Court first reviews Plaintiff's First Amended Complaint to determine whether Plaintiff has sufficiently alleged with particularity the circumstances supporting his contention that the claims submitted by Tidwell were false.  The Court then determines whether those factual allegations, taken as true at this stage of the proceedings, state a plausible claim under the False Claims Act.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges the following facts in his First Amended Complaint.  In July, 2010, Columbus Regional, through its wholly owned subsidiary, Columbus Radiation Oncology Treatment Center, LLC ("Columbus Radiation"), purchased the Tidwell Cancer Center for $10.5 million.  1st Am. Compl. ¶¶ 113-14, ECF No. 10.  At the time of the purchase, Columbus Regional had excess state of the art radiation therapy capacity and did not need Tidwell's facilities or equipment to meet the needs of patients in the area.  *Id.* ¶ 114.  According to Plaintiff, Tidwell's equipment did not meet the applicable standard of care for radiation therapy equipment and was essentially worthless.  *Id.* ¶ 121.  Over the objections of its accountants, Columbus Regional

3

accounted for $9 million of the purchase price as "good will." *Id.* ¶ 115. Although Tidwell never became an employee of Columbus Regional, he was supposed to continue to administer the affairs of the Tidwell Cancer Center on a day-to-day basis and practice radiation oncology there until his retirement two years later in December 2012. *Id.* ¶ 116. All other administrative and non-physician staff of Tidwell Cancer Center did become employees of Columbus Regional in 2010. *Id.* No new physician was recruited to take over Tidwell's practice. *Id.* Notwithstanding the condition of the equipment, the Tidwell Cancer Center and Columbus Regional agreed that Tidwell Cancer Center would submit claims to Medicare, Medicaid and other federally funded health benefits programs for both the professional component of radiation treatments and for the technical component. *Id.* Some of the patients who were treated under this arrangement are listed in the Complaint, along with the dates of service and the codes. *Id.* ¶¶ 116, 123. When payments for these claims were received, they were deposited into the Tidwell Cancer Center bank account and then transferred to Columbus Regional's bank account. *Id.* ¶ 116. The Tidwell Cancer Center disbanded upon the retirement of Tidwell in December 2012. *Id.*

Plaintiff alleges that Columbus Regional's purchase of Tidwell Cancer Center was not a good faith commercially

4

reasonable transaction for fair market value.  Instead, Plaintiff asserts that Columbus Regional paid Tidwell $10.5 million to obtain referrals from him during the two-year period following the purchase until his retirement and to prevent any referrals by him to any competitors of Columbus Regional.  Plaintiff maintains that this conclusion is supported by admissions from agents of Columbus Regional, the manner in which the transaction was accounted for on Columbus Regional's financial records, the lack of value for any tangible assets of Tidwell Cancer Center, the amount of the purchase price, and the conduct of Tidwell and Columbus Regional during the two years following the purchase.  Plaintiff contends that these allegations establish a violation of the federal Anti-Kickback Statute and the Stark Law.  Moreover, Plaintiff alleges that when Tidwell submitted bills to Medicare and Medicaid, he falsely certified that those bills were not related to services that were provided in violation of either of those statutes when in fact those services were tainted by such violations.  Plaintiff also contends that radiation therapy treatments during the two-year period following the purchase could not have been done within the standard of care given the condition of the equipment at the Tidwell Cancer Center, and therefore, billings for those treatments violated the False Claims Act.

DISCUSSION

To evaluate Tidwell's motion to dismiss, the Court first looks at the statutory law on which Plaintiff's claims are based—the False Claims Act, the Anti-Kickback Statute and the Stark Law. The Court then examines whether Plaintiff has alleged with particularity the circumstances giving rise to these claims as required by Federal Rule of Civil Procedure 9(b). The Court concludes by deciding whether the facts alleged, if true, sufficiently state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## I. The False Claims Act, The Anti-Kickback Statute, and the Stark Law

Plaintiff's claims are brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729-33. The False Claims Act authorizes private citizens to bring actions on behalf of the federal government to recover amounts that were paid by the government for false claims that were submitted with knowledge that the claims were false. 31 U.S.C. §§ 3729(a), 3730(b). False claims may include claims that sought payment for services that were not rendered or that were not medically necessary. *United States v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005). False claims may also include claims that certify compliance with laws and regulations concerning proper practices for medical providers, such as the Anti-Kickback

Statute and the Stark Law, when in fact those claims are for services that were provided in violation of those rules. 42 U.S.C. § 1320a-7b(g); *McNutt ex rel. United States v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005).

The federal Anti-Kickback Statute generally prohibits kickbacks or other payments made to induce or reward the referral or generation of federal health care business. 42 U.S.C. § 1320a-7b(b)(2)(A). Claims submitted that include items or services resulting from kickback violations may be deemed "false" under the False Claims Act. 42 U.S.C. §1320a-7b(g). The Anti-Kickback Statute does include statutory and regulatory "safe harbors." For example, the "personal services" safe harbor permits compensation agreements between non-employee physicians and hospitals if (1) a written agreement exists between the parties that is signed by the physician and the hospital; (2) the term of the agreement is at least one year; (3) the agreement covers all of the services to be provided by the physician and sets forth the physician's duties with specificity; (4) the aggregate compensation paid to the consultant physician over the term of the agreement is set in advance, is consistent with fair market value in an arms-length transaction, and is not determined by the volume or value of any referrals or business otherwise generated between the physician and the hospital. 42 C.F.R. §1001.952(d). The Anti-Kickback

Statute safe harbors also address space and equipment rental. To obtain the benefit of this safe harbor, the parties must (1) enter into a written lease, (2) that has a term of at least one year, and (3) sets a fair market value payment for the space or equipment that is set in advance and is not determined by the value of referrals. Specifically, for leases of office space, the aggregate space rented cannot exceed what is reasonably necessary to accomplish the commercially reasonable business purposes of the rental. *Id.* §1001.952(b)(5).

The Stark Law generally prohibits physicians from referring Medicare patients for certain designated services to an entity with which the physician has a financial relationship. 42 U.S.C. § 1395nn(a)(1)(A). It also prohibits an entity receiving such referrals from presenting to Medicare any claim for designated services provided as a result of that referral. *Id.* § 1395nn(a)(1)(B). A physician may not present or cause to be presented a claim for a designated service that the physician knows or should know is for an item or service that is not payable under the statute. *Id.* § 1395nn(g)(3). The Stark Law also has safe harbors or exceptions for arrangements that do not violate the statute if all of the conditions are met. *Id.* § 1395nn(3). These exceptions are similar to the safe harbors under The Anti-Kickback Statute.

**II.  Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that a party asserting a claim under the False Claims Act state with particularity the circumstances constituting the basis for the "false claim."  *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002).  The Court finds that Plaintiff has done so here.  He has specifically alleged the parties (the "who"), the transaction (the "what"), the date (the "when") and the location (the "where") of the conduct that he contends violates the federal Anti-Kickback Statute and the Stark Law.  Plaintiff further alleged specifically why none of the safe harbors or exceptions to those statutory prohibitions applies.  And Plaintiff alleged that Tidwell knowingly submitted billings that certified that the services covered by those billings were not tainted by violations of federal law when in fact they allegedly were.  Plaintiff also provided specific examples of such billings, with patient names, dates of service, and types of service.  While Plaintiff may not have alleged every tainted bill, he clearly alleges that this conduct occurred over the two-year period following Columbus Regional's purchase of Tidwell Cancer Center and prior to Tidwell's retirement.  Furthermore, for the two-year period after the sale of Tidwell Cancer Center, Plaintiff alleges that the radiation therapy equipment was so substandard

that no radiation therapy could have been provided by Tidwell within the applicable standard of care. Consequently, any billings during that time for such radiation therapy were either for services that were not provided or for services that were not medically necessary. Tidwell may quarrel with the truthfulness of these allegations, but this is not the stage where Plaintiff must come forward with proof. That time will come. This case is not analogous to those cases in which the plaintiff simply alleges generally that false claims were submitted. Without the benefit of discovery, it is difficult to imagine how Plaintiff here could have been any more specific in his allegations. The Court finds that Plaintiff has complied with Federal Rule of Civil Procedure 9(b).

**III. Federal Rule of Civil Procedure 12(b)(6)**

Tidwell seeks to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) as implausible. The thrust of his argument is not that if Plaintiff proves everything he alleges, he still cannot prevail under the applicable law. Tidwell simply finds it incredulous that anyone could possibly believe Plaintiff's allegations. Tidwell's Motion to Dismiss (ECF No. 25) is another example of what *Twombly* and *Iqbal* have wrought—a compulsion to file a motion to dismiss in every case. The Supreme Court's statement in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which was reaffirmed in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), did not seem startling: to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678. The additional explanation that the complaint must include sufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, likewise did not suggest that the Supreme Court intended to rewrite Rule 12(b)(6) or abandon notice pleading; and the Court's observation that "a formulaic recitation of the elements of a cause of action" does not suffice, *id.,* did not seem to foreshadow a sea-change in the legal standard governing motions to dismiss. But many lawyers (and judges) have interpreted the Supreme Court's decisions in *Twombly* and *Iqbal* as ushering in a new era for motions practice in federal court.

Since *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case, hoping to convince the Court that it now has the authority to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations. These motions, which bear a close resemblance to summary judgment motions, view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action

11

as "bare recitals." They almost always, either expressly or, more often, implicitly, attempt to burden the plaintiff with establishing a reasonable likelihood of success on the merits under the guise of the "plausibly stating a claim" requirement. While these cautious lawyers, who have been encouraged by *Twombly* and *Iqbal*, have parsed the *Twombly* decision to extract every helpful syllable, they often ignore a less well known (or at least less frequently cited) admonition from *Twombly*: "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal quotation marks omitted). Finding the *Twombly/Iqbal* urge irresistible, many lawyers fail to appreciate the distinction between determining whether a claim for relief is "plausibly stated," the inquiry required by *Twombly/Iqbal,* and divining whether actual proof of that claim is "improbable," a feat impossible for a mere mortal, even a federal judge.

This Court obviously understands that not all motions to dismiss suffer from this *Twombly/Iqbal* compulsion, but many do, and the present one certainly does. Accordingly, it is denied.

CONCLUSION

For the reasons stated in this Order, Defendant Tidwell's Motion to Dismiss (ECF No. 25) is denied.[1]  The Court hastens to add, however, that its ruling today does not suggest that Plaintiff's allegations are true or even that Plaintiff will ultimately be able to prove them.  The law requires the Court at this stage to accept those factual allegations as true.  Having done so for the moment, the Court has found that a plausible claim has been stated under the law.  Plaintiff will have the burden of producing evidence to support these allegations, and Tidwell will have an opportunity to contest that evidence.  Today's Order simply allows the parties to proceed to the next step with neither a final validation nor repudiation of the claims by the Court.

IT IS SO ORDERED, this 9th day of October, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[1] Although this Order focuses specifically on Plaintiff's federal claims, the Court, based upon the same rationale expressed herein, also denies Tidwell's motion to dismiss Plaintiff's state law claims to the extent those claims apply to Tidwell.