# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, Georgia 30309-3521
www.kslaw.com

Richard L. Shackelford
Direct Dial: (404) 572-4995
Direct Fax: (404) 572-5140
rshackelford@kslaw.com

May 30, 2014

**VIA: E-MAIL AND UPS**

Jamie M. Bennett, Esq.
ASHCRAFT & GEREL, LLP
4301 Garden City Drive
Suite 301
Landover, MD 20785

      Re:    United States of America, ex rel. Barker v. Columbus Regional Healthcare System, et al., United States District Court for the Middle District of Georgia, Civil Action No. 4-12-cv-108 (CDL)

Dear Jamie:

      We write to follow up on our call yesterday, concerning (1) Columbus Regional's request for Mr. Barker's consent to file an Amended Answer, and (2) our commitment that we would inform you prior to the commencement of depositions of the Columbus Regional employees whether Columbus Regional intended to assert an advice of counsel defense in this case. As to the latter point, we can confirm that Columbus Regional does not intend to assert an advice of counsel defense to any of the claims set forth in your Amended Complaint.

      As to the first point, our proposed Amended Answer is attached at Exhibit A. The Amended Answer is being filed solely to confirm in the pleadings Columbus Regional's position that its relationships with Dr. Tidwell and Radiation Oncology of Columbus are in compliance with the Stark Law and Anti-Kickback Statute, and qualify for exceptions and/or safe harbors under those laws, as well as our client's position that the alleged referrals at issue are carved out of the definition of "referrals," as being made by consulting radiation oncologists. Thus, the only change to the Answer is the inclusion of the new Thirteenth and Fourteenth Defenses on pages 90-91 of the proposed Amended Answer.

      As outlined below, we believe that the Amended Complaint, as well as the discovery served by Mr. Barker, reflect that exceptions and/or safe harbors have been at issue throughout this case. The Amended Complaint evidences that Mr. Barker contemplated that safe harbors and exceptions would be central issues in this case and specifically cites or points to key elements of the following safe harbors or exceptions:

Jamie M. Bennett, Esq.
May 30, 2014
Page 2

- AKS personal services safe harbor (¶ 89) and key elements of same (¶110) ("the agreements are not reduced to writing, do not require payment of fair market value, are not commercially reasonable").

- AKS equipment rental safe harbor (¶ 90);

- AKS sale of practice safe harbor (¶¶ 117, 119);

- Stark personal services exception (¶ 94); and key elements of same (¶110);

- Stark space and equipment rental exception (¶ 95);

- Stark fair market value exception key elements (¶ 110); and

- Stark isolated transaction exception (¶¶ 118, 120, 121).

Indeed, the Amended Complaint cites a quote by Columbus Regional's CEO, specifically stating that the institution "uses outside firms to establish fair market value rates for all financial transactions involving physicians and others in a position to influence referrals, adding that 'when you don't . . . you find yourself in a lawsuit . . . .'" ¶111. The clear import of this quote is that the institution will defend Stark lawsuits by reliance on exceptions that contemplate fair market valuations. The prominence of these provisions in the Amended Complaint is hardly surprising since their potential application is the central issue in any analysis of a physician/hospital financial relationship under the Stark Law and Anti-Kickback Statute.

The written discovery served by Mr. Barker in the case also contemplates that exceptions and safe harbors are at issue. Relator's Requests for Production 9 – 14 broadly seek documents related to ROC, including all contracts with ROC or the ROC physicians, all documents reflecting payments made to ROC, and all documents reflecting a fair market valuation for all payments made by CRHS to ROC (relevant, e.g., to the AKS personal services safe harbor, Stark personal services exception, Stark fair market value exception, and the Stark indirect compensation exception). Relator's Requests for Production 16 – 21 seek similar information relating to the acquisition of the Tidwell Cancer Treatment Center by Columbus, including all documents related to the fair market valuation of the Center and documents reflecting payments to TCTC by CRHS (relevant, e.g., to the AKS personal services safe harbor, Stark personal services exception, Stark fair market value exception, AKS sale of practice safe harbor, and Stark isolated transaction exception).

Mr. Barker's supplemental responses to Dr. Tidwell's Interrogatory No. 1 further outline Relator's understanding that elements of the Stark isolated transaction exception—fair market value and commercial reasonableness—are at issue in this case. Indeed, Mr. Barker explicitly notes in those supplemental responses that the "Fair Market Value of the TCTC as of June 2010 will be the subject of further discovery in this case and expert testimony."

Finally, Mr. Barker's 30(b)(6) deposition notice, issues 4 and 5, indicate relator's intent to probe Defendants' reliance on Stark exceptions and AKS safe harbors. Issue 4 seeks a witness to testify concerning the remuneration relationship between Columbus and ROC, including specifically

Jamie M. Bennett, Esq.
May 30, 2014
Page 3

"performance of duties under Medical Director or similar contracts with CRHS, and any Fair Market Valuation and/or legal opinion supporting these contracts under the AKS or Stark." Contracts and the presence of fair market value relate directly to, e.g., the AKS personal services safe harbor, Stark personal services exception, Stark fair market value exception, and the Stark indirect compensation exception. Issue 5 seeks similar testimony concerning the remuneration relationship between Dr. Tidwell and the purchase by Columbus of the Tidwell Cancer Treatment Center, including its fair market valuation. This relates directly to these same exceptions and safe harbors, as well as the AKS sale of practice safe harbor and Stark isolated transaction exception.

The issue, therefore, as we discussed yesterday is not whether exceptions and safe harbor provisions have been part of the case, but simply whether, from a belt and suspenders perspective, it would be prudent to identify them in the Amended Answer as potential affirmative defenses. As we mentioned, based on our research of this issue, the law is evolving on the issue of whether Stark Law exceptions and Anti-Kickback Statue safe harbors are affirmative defenses. The law in this area has been emerging in recent years and over the last several months, including decisions published after Columbus Regional filed its Answer (see, e.g., *United States ex rel. Willis v. Angels of Hope Hospice, Inc.*, No. 5:11-CV-041(MTT), 2014 WL 684657, at *10-11 (M.D. Ga. Feb. 21, 2014)). Neither the Supreme Court nor the Eleventh Circuit has ruled that exceptions to the Stark statute are affirmative defenses that the defendant has the burden to prove in an FCA action. The district court decisions that have reached this conclusion provide little reasoning to support this determination and we believe are wrongly decided. We believe that the correct reading of the statute and application of policy places the burden of proving these exceptions on the plaintiff. *See, e.g., United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*, 202 F. Supp. 2d 671, 686 (E.D. Mich. 2002) ("Although the Government has the burden of establishing that the lease rate was determined in a manner that took into account the value of patient referrals, the Government has presented no such evidence.").

You directed us to the Eleventh Circuit's decision in *United States v. Vernon*, 723 F.3d 1234, 1270-72 (11th Cir. 2013), for the proposition that the Court has decided an AKS safe harbor is an affirmative defense. We agree that the *Vernon* decision referred to the AKS's bona fide employee exception in the context of a criminal prosecution as an affirmative defense. However, this issue has not been foreclosed, as *Vernon's* reference to an "affirmative defense" is "dicta because it is unnecessary to the decision in that case." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 764 (11th Cir. 2010). In rejecting a criminal defendant's argument that "the government's evidence failed to establish that [an individual] was not a bona fide employee," the Eleventh Circuit explained that the government had presented "overwhelming evidence" to prove that the exception did not apply. See *Vernon*, 723 F.3d at 1271. The Court then stated, without elaboration, that "the jury reasonably rejected this affirmative defense." *Id.* Given that the government established through overwhelming evidence that the bona employment exception did not apply, a defendant's duty to prove this exception as an affirmative defense was not at issue in *Vernon*.

Notwithstanding the foregoing, we recognize that certain non-binding decisions, including a 2014 decision by a fellow district court in the Middle District of Georgia that only came to our attention this week, *Willis, supra*, have concluded—many with minimal or no analysis—that an AKS safe-harbor is an affirmative defense. We certainly understand that you take the position on behalf of Mr. Barker that the safe harbors and Stark exceptions are affirmative defenses that place the burden of proof on Columbus

Jamie M. Bennett, Esq.
May 30, 2014
Page 4

Regional. The parties will have the opportunity to address this critical and emerging legal issue during the briefing of summary judgment motions.

Given the possibility that Stark Law exceptions and Anti-Kickback safe harbors are to be considered as affirmative defenses, and especially in light of the recent decision in *Willis*, we seek, as a cautionary measure, to amend the Answer pursuant to Fed. Rule Civ. P. 15(a)(2), which provides a party may amend its pleading with the "opposing party's written consent or the court's leave." We trust that you will consent. If not, we will file for leave to amend with the Court. As you know, Rule 15(a)(2) also provides that"[t]he court should freely give leave when justice so requires."

In our call discussing whether Mr. Barker would consent, you raised concerns about prejudice to Mr. Barker for not having notice that these defenses would be asserted, and we would like to address those concerns. First, as explained above, we believe that the issues have been fully part of the case from the beginning and we note that you have already conducted some discovery on the issues and are free to conduct additional discovery if necessary. That is why we wanted to make sure you knew of our position at this point. Second, if you have any concerns about needing more time to respond to these issues, as we expressed yesterday, we are willing to work with you to obtain an appropriate extension of discovery. Third, it goes without saying that if Columbus Regional were denied the right to rely on exceptions and safe harbors as part of its defense, that would be *overwhelmingly* prejudicial to Columbus Regional and would create a substantial issue on appeal.

In closing, we believe the issue of Stark exceptions and Anti-Kickback safe harbors are fundamental to the litigation of Mr. Barker's claims concerning the financial relationships with Dr. Tidwell and Radiation Oncology of Columbus and have been at issue in this litigation since the filing of the Amended Complaint. Thus, we do not believe that Mr. Barker can show any prejudice from Columbus Regional amending its Answer to reflect its position as to those provisions. Nevertheless, we certainly are not trying to cause any prejudice to relator in this regard and, therefore, if you contend you need more time in light of this proposed amendment before depositions of the Columbus Regional employees commence, we reiterate our willingness to consent to an appropriate extension of discovery.

We appreciate your consideration of this request and are available to discuss it at your convenience if you have any questions.

Sincerely,

Richard L. Shackelford

cc:   Nathan M. Peak, Esq.
      Michael E. Paulhus, Esq.
      Jessica J-M Hagen, Esq.
      Jeffrey Brown, Esq.

# Nathan Peak

**From:** Jamie Bennett
**Sent:** Saturday, May 31, 2014 9:59 AM
**To:** Shackelford, Rick; Nathan Peak
**Cc:** jbrown@brownadamsllc.com; Paulhus, Mike; Hagen, Jessica
**Subject:** RE: Barker v. Columbus Regional, et al.

Dear Rick,

Because I believe that time is of the essence in light of the looming discovery cut-off and depositions that are set to begin in less than a week, I am going to respond informally by email. I will have a letter to you on Monday when I return to the office.

What your letter fails to address is the fact that once your client affirmatively relies upon a defense of good faith compliance with the laws and regulations, the case law in the Eleventh Circuit is crystal clear that the defendant waives the attorney client privilege and must produce all privileged documents that reflect on this defense. Thus, the prejudice to my client arises not from the fact that he did not know that safe harbors were implicated in this litigation but that he did not know that CRHS would *affirmatively* rely upon those safe harbors until the possibility was raised last Thursday, May 29, 2014. This was one day before the original discovery cut-off, thirty one days before the new discovery cut-off, seven months after discovery commenced and almost exactly one year after CRHS was initially served with the Complaint.

The prejudice to Mr. Barker under this scenario is quite clear -- that he, through my firm, has conducted discovery and litigated this case in good faith, including incurring substantial costs for review of documents and work preparing for depositions. It is far too late for him to learn that CRHS has a defense that might completely undermine substantial aspects of his case. I think it was incumbent upon CRHS to raise this defense at the very first possible moment, not the last, in order to prevent the situation that has occurred, which is that we have incurred substantial costs on Mr. Barker's behalf. A further prejudice to Mr. Barker is that we have conducted discovery and prepared for depositions without having had the opportunity to review CRHS's attorney client privilege documents which reflect on its good faith defenses. Substantive depositions are set to commence in a week, after having already been postponed once with an extension of the discovery cut-off. We cannot conduct meaningful depositions until we know what CRHS's defenses are and have an opportunity to review all documents, including attorney client privilege documents. The late assertion of this defense is creating delay, which is inherently prejudicial to the Relator.

The law is clear in the Eleventh Circuit and elsewhere that a Defendant waives the attorney client privilege when it "injects into the case an issue that in fairness requires an examination of otherwise protected communications." *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1419 (11th Cir. 1994). In *Cox*, the Eleventh Circuit considered whether U.S. Steel ("USX") had waived the attorney client privilege by asserting that it believed its revised personnel policies were completely lawful, in the face of accusations by union members that the Company had changed its leave-of-absence policy to influence union officials by increasing their pension rights during labor negotiations. The Eleventh Circuit noted that "[a]lthough USX denied any intent to assert a defense of advice of counsel or to rely on any privileged attorney-client communications in its defense, . . . 'USX's defense . . . necessarily implicates all of the information at its disposal when it made the decision to change the leave-of-absence policy . . . .'" *Id.* at 1418.

The Eleventh Circuit affirmed the district court's holding that USX had waived the attorney client privilege by asserting this defense, noting that "it would be inequitable to allow USX to present evidence tending to show it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law." *Id.* The Eleventh Circuit also pointed out that it was USX's "affirmative . . [assertion] that it believed that its change in pension fund policy was legal" that "injected the issue of its knowledge of the law into the case and thereby waived the attorney client privilege." *Id.* at 1419. According to the Court, USX could have simply denied intent without affirmatively asserting good faith, and preserved its privilege. *Id. See also U.S. v. Bilzerian*, 926

1

F.2d 1285,1292 (2d Cir. 1991)(defendant's testimony that he thought his actions were legal put his knowledge of the law and the basis for his understanding of what the law required in issue and conversations with counsel regarding the legality of his schemes were directly relevant).

The privilege was similarly waived in a case where Exxon asserted a defense of "good faith compliance with governmental regulations," in a suit by the government to recoup oil overcharges. *U.S. v. Exxon Corp.*, 94 F.R.D. 246, 247 (D.D.C. 1981). The Court "rejected the defendant's argument that its good faith defense only involved communications between Exxon and the government, holding instead that Exxon's "internal statements should also reveal whether Exxon honestly believed that it acted in good faith." *Id.* The Court ultimately concluded that "any documents pertinent to Exxon's defense of good faith are discoverable." *E.g. United States v. Mackey*, 2012 WL 3260462 at *4 (N.D. Ga. 2012)(if privilege existed, it would be waived by assertion of good faith defense to charges that defendant defrauded investors); *Carpenter v. Mohawk*, 2007 WL 5971741 at *12 (N.D. Ga. 2007) (Defendant's assertion that its attorney's interview of the Plaintiff was solely designed to determine whether Plaintiff had violated the law rather than to determine if he had reported violations of the law by the Defendant to the authorities required review of privileged communications). This case law applies squarely to the defenses CRHS seeks to assert.

Your letter does not address the issue of waiver and production of attorney client privilege documents that would be appropriate if CRHS asserts the defenses it describes in its letter. I assume you agree however, that such production would attend this affirmative defense and that the parties would need to extend the discovery cut-off to accommodate this production. Under the circumstances, the Relator would expect the Defendant to approach the Court requesting a substantial extension -- the timing of which would reflect however much time your client would need to gather and produce additional documents and at least six weeks for us to review them -- explaining to the Court why this issue is just now arising a year after you first reviewed the Complaint.

I look forward to your expeditious response.

Regards,

Jamie

---

**From:** Shackelford, Rick [mailto:RShackelford@KSLAW.com]
**Sent:** Friday, May 30, 2014 5:28 PM
**To:** Jamie Bennett; Nathan Peak
**Cc:** jbrown@brownadamsllc.com; Paulhus, Mike; Hagen, Jessica
**Subject:** Barker v. Columbus Regional, et al.

**Jamie and Nathan, here is the letter and proposed amended answer that Mike and I discussed with Jamie during our call yesterday. Thanks and have a good weekend.**

**       Rick**

Richard L. Shackelford
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA  30309
Phone:  404-572-4995
Fax:  404-572-5140

2

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

IRS Circular 230 Notice:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

DISTRICT OF COLUMBIA
ALLEN J. LOWE
CHRISTOPHER V. TISI
REBEKAH R. MILLER
JERRY D. SPITZ
BENJAMIN E. DOUGLAS

MARYLAND
ROBERT G. SAMET
DAVID M. LACIVITA
WILLIAM F. MULRONEY
ROBERT P. ENDERLE
JONATHAN S. BEISER
DAVID M. LAYTON
ROBERT A. FLACK
ALAN J. MENSH
SAMUEL G. LYNN
NATHAN M. PEAK
MICHAEL C. LIND
STEPHEN M. GENSEMER
JAMIE M. BENNETT
SARA E. ANDERSON

## ASHCRAFT & GEREL, LLP
ATTORNEYS AND COUNSELLORS AT LAW
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

SUITE 301
4301 GARDEN CITY DRIVE
LANDOVER, MARYLAND 20785

(301) 459-8400
FAX (301) 459-1364

ROCKVILLE, MD 20852
SUITE 1002
11300 ROCKVILLE PIKE
(301) 770-3737

BALTIMORE, MD 21202
SUITE 1212
10 EAST BALTIMORE STREET
(410) 539-1122

WASHINGTON, DC 20036
SUITE 400
2000 L STREET, N.W.
(202) 783-6400

ALEXANDRIA, VA 22311
SUITE 650
4900 SEMINARY ROAD
(703) 931-5500

VIRGINIA
LAWRENCE J. PASCAL
WAYNE M. MANSULLA
JAMES F. GREEN
MICHELLE A. PARFITT
CRAIG A. BROWN
SIDNEY SCHUPAK
DAVID L. BAYNE, JR.
DAVID B. VERMONT
BRIANNE P. RIDEOUT
JOSEPH T. MUSSO
ALAINA M. DARTT
PAULINE I. KHAMO
PETER T. ANDERSON

OF COUNSEL
SUSAN C. MINKIN
L. PALMER FORET
VIRGINIA R. DIAMOND

LEE C. ASHCRAFT
1908-1993
MARTIN E. GEREL
1918-2011

June 2, 2014

Richard L. Shackelford, Esq.
Michael Paulhus, Esq.
KING & SPALDING, LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521

  Re: *U.S. ex rel. Barker v. Columbus Regional Healthcare System, et al.*
     Civil Action No. 4:12-cv-108(CDL)

Dear Rick,

  I am writing further to our conversation of May 29, 2014, to set forth our views on CRHS' decision to assert an affirmative defense of good faith reliance upon the legality of its conduct, based upon the Anti-kickback and Stark Safe Harbors, and upon advice of counsel, in the captioned litigation. I have already responded by email sent to you on May 31, 2014, because I believe that time is of the essence in resolving this issue, in light of the looming discovery cut-off and depositions that are set to begin in less than a week. This letter formalizes that communication.

  First of all, as we have already discussed, the law is clear in the Eleventh Circuit that good faith defenses are affirmative defenses. *United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013). The Eleventh Circuit also made clear that the defendant bears the burden of proving its good faith reliance on the legality of its conduct. *Id.* The elements of that defense are: (1) that the defendant fully

June 2, 2014
Page 2

disclosed all facts material to the issue to the attorney upon whose advice he relied; and (2) that he thereafter relied in good faith on the advice provided. *Id.* CRHS should have pleaded that defense in the answer it filed to the Amended Complaint on September 25, 2013. You claim that CRHS should be permitted to amend the Complaint to assert this defense, and that the late amendment will not in any way prejudice my client. Your theory is that Mr. Barker will not be prejudiced because he has all along known that the Safe Harbors are relevant to this case as his Complaint specifically references those exceptions.

Your May 30, 2014 letter fails to adequately address the fact that once your client affirmatively relies upon a defense of good faith compliance with the law, the case law in the Eleventh Circuit is crystal clear that the defendant waives the attorney client privilege and must produce all privileged documents that reflect on this defense. Thus, the prejudice to my client arises not from the fact that he did not know that safe harbors were implicated in this litigation but that he did not know that CRHS would *affirmatively* rely upon those safe harbors until the possibility was raised last Thursday, May 29, 2014. This was one day before the original discovery cut-off, thirty one days before the new discovery cut-off, seven months after discovery commenced and almost exactly one year after CRHS was initially served with the Complaint.

The prejudice to Mr. Barker under this scenario is quite clear -- that he, through my firm, has conducted discovery and litigated this case in good faith, including incurring substantial costs for review of documents and work preparing for depositions. It is far too late for him to learn that CRHS has a defense that might completely undermine substantial aspects of his case. I think it was incumbent upon CRHS to raise this defense at the very first possible moment, not the last, in order to prevent the situation that has occurred, which is that we have incurred substantial costs on Mr. Barker's behalf. A further prejudice to Mr. Barker is that we have conducted discovery and prepared for depositions without having had the opportunity to review CRHS' attorney client privilege documents which reflect on its good faith defenses. Substantive depositions are set to commence in a week, after having already been postponed once with an extension of the discovery cut-off. We cannot conduct meaningful depositions until we know what CRHS' defenses are and have an opportunity to review all documents, including attorney client privilege documents. The late assertion of this defense is

June 2, 2014
Page 3

creating delay, which is inherently prejudicial to the Relator.

The law is clear in the Eleventh Circuit and elsewhere that a Defendant waives the attorney client privilege when it "injects into the case an issue that in fairness requires an examination of otherwise protected communications." *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1419 (11th Cir. 1994). In *Cox*, the Eleventh Circuit considered whether U.S. Steel ("USX") had waived the attorney client privilege by asserting that it believed its revised personnel policies were completely lawful, in the face of accusations by union members that the Company had changed its leave-of-absence policy to influence union officials by increasing their pension rights during labor negotiations. The Eleventh Circuit noted that "[a]lthough USX denied any intent to assert a defense of advice of counsel or to rely on any privileged attorney-client communications in its defense, . . . 'USX's defense . . . necessarily implicates all of the information at its disposal when it made the decision to change the leave-of-absence policy . . . .'" *Id.* at 1418.

The Eleventh Circuit affirmed the district court's holding that USX had waived the attorney client privilege by asserting this defense, noting that "it would be inequitable to allow USX to present evidence tending to show it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law." *Id.* The Eleventh Circuit also pointed out that it was USX's "affirmative . . [assertion] that it believed that its change in pension fund policy was legal" that "injected the issue of its knowledge of the law into the case and thereby waived the attorney client privilege." *Id.* at 1419. According to the Court, USX could have simply denied intent without affirmatively asserting good faith, and preserved its privilege. *Id. See also U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)(defendant's testimony that he thought his actions were legal put his knowledge of the law and the basis for his understanding of what the law required in issue and conversations with counsel regarding the legality of his schemes were directly relevant).

The privilege was similarly waived in a case where Exxon asserted a defense of "good faith compliance with governmental regulations," in a suit by the government to recoup oil overcharges. *U.S. v. Exxon Corp.*, 94 F.R.D. 246, 247

June 2, 2014
Page 4

(D.D.C. 1981). The Court "rejected the defendant's argument that its good faith defense only involved communications between Exxon and the government, holding instead that Exxon's "internal statements should also reveal whether Exxon honestly believed that it acted in good faith." *Id.* The Court ultimately concluded that "any documents pertinent to Exxon's defense of good faith are discoverable." *E.g. United States v. Mackey*, 2012 WL 3260462 at *4 (N.D. Ga. 2012)(if privilege existed, it would be waived by assertion of good faith defense to charges that defendant defrauded investors); *Carpenter v. Mohawk*, 2007 WL 5971741 at *12 (N.D. Ga. 2007) (Defendant's assertion that its attorney's interview of the Plaintiff was solely designed to determine whether Plaintiff had violated the law rather than to determine if he had reported violations of the law by the Defendant to the authorities required review of privileged communications). This case law applies squarely to the defenses CRHS seeks to assert.

Your letter does not address the issue of waiver and production of attorney client privilege documents that would be appropriate if CRHS asserts the defenses it describes in its letter. I assume you agree however, given the clarity of the Eleventh Circuit law, that such a production would be required by the assertion of this affirmative defense and that the parties would need to extend the discovery cut-off to accomplish this production. Under the circumstances, if the Defendant asserts the affirmative defense it describes, the Relator would expect the Defendant to approach the Court requesting a substantial extension -- the timing of which would reflect however much time your client would need to gather and produce additional documents and at least six weeks for us to review them -- explaining to the Court why this issue is just now arising a year after you first reviewed the Complaint.

I look forward to your expeditious response.

Very truly yours,

Jamie M. Bennett

JMB/pg

# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, Georgia 30309-3521
www.kslaw.com

Richard L. Shackelford
Direct Dial: (404) 572-4995
Direct Fax: (404) 572-5140
rshackelford@kslaw.com

June 2, 2014

**VIA: E-MAIL AND UPS**

Jamie M. Bennett, Esq.
ASHCRAFT & GEREL, LLP
4301 Garden City Drive
Suite 301
Landover, MD 20785

   Re: *United States of America, ex rel. Barker v. Columbus Regional Healthcare System, et al.*, United States District Court for the Middle District of Georgia, Civil Action No. 4-12-cv-108 (CDL)

Dear Jamie:

  We write in response to your email dated May 31, 2014, confirmed by letter of this afternoon, regarding Columbus Regional's request for Mr. Barker's consent to file an Amended Answer. As outlined in our May 30 letter, as a cautionary measure, we intend to amend our answer to confirm Columbus' Regional position that its relationships with Dr. Tidwell and Radiation Oncology of Columbus are in compliance with the Stark Law and the Anti-Kickback Statute. We further confirmed in our letter that Columbus Regional is not relying on an advice of counsel defense. In response, you wrote: "What your letter fails to address is the fact that once your client affirmatively relies upon a defense of good faith compliance with the laws and regulations, the case law in the Eleventh Circuit is crystal clear that the defendant waives the attorney client privilege and must produce all privileged documents that reflect on this defense." Because we have a different view of the law, this letter clarifies Columbus Regional's position and our understanding of the law.

  As an initial matter, your confirmatory letter of this afternoon relies on *United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013), in outlining elements of a good faith reliance on the legality of conduct and you state Columbus Regional is now seeking to assert this defense. This conflates the issue of waiver of privilege, which is totally separate from our request that you consent to the filing of the Amended Answer. Columbus Regional's position on good faith compliance has been part of the case since we first responded to your client's complaint. Defendants' 12th Defense in the original Answer states, "Relator's claims for relief are barred because any actions taken by the Defendants with respect to the subject matters alleged in the Complaint were undertaken in good faith, and constitute lawful, proper, justified, and/or privileged conduct." Thus, there is nothing about our Amended Answer that changes the

Jamie M. Bennett, Esq.
June 2, 2014
Page 2

landscape of this issue. Accordingly, any suggestion that you were not on notice of this position is factually incorrect.

Columbus Regional's position has been consistent in this regard, and maintaining this position does not prejudice Mr. Barker. In addition to setting out the issue of good faith compliance in the original Answer, Defendants also denied allegations of non-compliance with the Stark Law, Anti-Kickback Statute, or violations of the False Claims Act and denied Relator's *prima facie* element of intent. For example, in the Answer:

- Defendants deny that the conduct alleged in Relator's AC constitutes a violation of the False Claims Act or the Georgia False Medical Claims Act. (¶¶ 12, 13)

- Defendants deny that they violated the federal Anti-Kickback Statute or the Stark Statute. (¶87 & ¶108)

- Defendants deny the remaining allegations contained in Paragraph 110 of Relator's AC. (¶110) [Including "*The remuneration that CRHS provides to ROC violates Stark and the AKS because, inter alia, the agreements are not reduced to writing, do not require payment of fair market value, are not commercially reasonable and are designed to induce or reward referrals from ROC to CRHS. CRHS entered into these arrangements knowing that they violated Stark and the AKS.*"]

- Defendants deny the remaining allegations in Paragraph 120 of Relator's AC. (¶120) [Including "*The purpose of CRHS' purchase of TCTC was to secure referrals from TCTC to CRHS instead of to its competitors.*"]

- Defendants deny the remaining allegations contained in Paragraph 121 of Relator's AC. (¶121) [Including "*The $10.5 million that CRHS paid for the TCTC was not commercially reasonable in light of the condition and capabilities of the equipment. That purchase price was designed to secure a stream of referrals and to prevent those referrals from going to competitors of CRHS.*"]

- Defendants deny the allegations in Paragraph 125 of Relator's AC. (¶125) ["*By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(a).*"]

- Defendants deny the allegations in Paragraph 127 of Relator's AC. (¶127) ["*Defendants knowingly caused to be made or used false records or false statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States and knowingly concealed and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.*"]

- Defendants deny the allegations in Paragraph 130 of Relator's AC. (¶130) ["*By virtue of the acts described above, Defendant knowingly made or caused to be made a false statement or misrepresentation for use in determining rights to a benefit or payment under the Georgia Medicaid Program. GEORGIA CODE. § 49-4-168.1.*"]

Jamie M. Bennett, Esq.
June 2, 2014
Page 3

In addition, we believe that your legal position on privilege waiver is incorrect. There is a distinction between asserting a "good faith" defense by explicitly relying on privileged advice, versus demonstrating compliance with a statutory or regulatory scheme from a factual standpoint. While the former may, in specific circumstances, result in an implied waiver of privileges, the cases cited in your email are not applicable to Columbus Regional's position in this case. Columbus Regional does not assert that it believed in good faith it complied with the law *based on privileged guidance from attorneys*. Rather, it is 1) that Columbus Regional's conduct, as a factual matter, either satisfied applicable exceptions and safe harbors, or was not within the ambit of the statutes, and 2) Columbus Regional did not act with the requisite intent to violate the Anti-Kickback Statute or the False Claims Act and acted in good faith in seeking to comply with the applicable regulatory laws. Columbus Regional is not relying on advice of counsel to support this position. We believe that your correspondence overstates the conditions in which courts have found a waiver of privilege.

A defendant may dispute facts and deny intent without waiving attorney-client privilege. *See S. Pan Servs. Co. v. S. B. Ballard Constr. Co.*, 2009 U.S. Dist. LEXIS 59707, 5-6 (M.D. Fla. June 30, 2009) (Plaintiff has not implicitly waived its attorney-client privilege where the "Plaintiff denies it filed a fraudulent claim of lien . . . not that it relied, in good faith, on advice of counsel to show a lack of willfulness on its part with respect to filing a fraudulent claim of lien."); *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 239 (M.D. Fla. 1994) ("To waive a privilege, a party must do more than merely deny the opposing party's accusations, but must affirmatively raise the issue involving privileged communications); *Chick-fil-A v. ExxonMobil Corp.*, 08-61422-CIV, 2009 WL 3763032, at *10 (S.D. Fla. Nov. 10, 2009) (rejecting argument that implied waiver based on alleged assertion of good faith occurred *where the defendant was "not attempting to use privileged information . . . as a sword"*) (emphasis added); *In re Grand Jury Proceedings John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003) ("the reasoning of Bilzerian and the other pertinent authorities in no way suggests that, merely by telling the prosecutor that he believes he is innocent, a defendant or suspect forfeits his privileges.") .

Finally, for the position that you suggest – a Defendant stating that they complied generally with an *intent-based* law in good faith – to trigger a waiver of attorney-client privilege would be manifestly unfair and unjust and eviscerate the attorney-client privilege any time an intent-based statute is at issue in litigation. We do not believe the Court will accept such a radical reading of the law.

For all of these reasons, we disagree with your suggestion that any of the issues raised in the Amended Answer, or any issue otherwise raised by Columbus Regional in this case, constitutes a waiver of the attorney-client privilege. As we noted in our last letter, if you would like more time to assess this issue, or if you want to seek guidance from the Court on the issue, we are willing to discuss an appropriate amendment to the scheduling order.

Jamie M. Bennett, Esq.
June 2, 2014
Page 4

    As we have agreed by e-mail earlier today, we are available to discuss this issue by phone this afternoon.

                                    Sincerely,

                                    Richard L. Shackelford

cc:    Nathan M. Peak, Esq.
       Michael E. Paulhus, Esq.
       Jessica J-M Hagen, Esq.
       Jeffrey Brown, Esq.