IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| RICHARD BARKER, *on behalf of the United States of America and the State of Georgia*, | * * * |
| Plaintiff, | * |
| vs. | CASE NO. 4:12-cv-108 (CDL) * |
| COLUMBUS REGIONAL HEALTHCARE SYSTEM, INC., THE MEDICAL CENTER, JOHN B. AMOS CANCER CENTER, REGIONAL ONCOLOGY LLC, THOMAS J. TIDWELL, and COLUMBUS RADIATION ONCOLOGY TREATMENT CENTER, | * * * * * |
| Defendants. | * |

O R D E R

The attorney-client privilege may be one of the oldest privileges for confidential communications, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), but it is not sacrosanct. The privilege, of course, generally protects a client's confidential communications with his attorney when they are made "for the purpose of securing legal advice or assistance." *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1414 (11th Cir. 1994). Because the lawyer needs to be fully informed by the client to provide sound legal advice or advocacy, the privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in

the observance of law and administration of justice." *Upjohn,* 449 U.S. at 389. Sometimes, however, there are interests that outweigh the values supporting this important privilege, and exceptions to the attorney-client privilege have been made under those limited circumstances. *Cox,* 17 F.3d at 1414. Plaintiff's Motion to Compel relies on one of these exceptions and seeks to have the Court order Defendant Columbus Regional Healthcare System, Inc. ("Columbus Regional") to disclose confidential attorney-client communications. For the reasons that follow, Plaintiff's Motion to Compel (ECF No. 61) is granted.

Plaintiff maintains that Columbus Regional waived the attorney-client privilege. Since the privilege belongs solely to the client, the client may certainly waive it, "either expressly or by implication." *Cox*, 17 F.3d at 1417. To determine whether a waiver occurred, the Court must examine Columbus Regional's conduct in the context of the claims asserted and the defenses raised in the action. Plaintiff asserts claims under the False Claims Act, 31 U.S.C. §§ 3729-33, against Columbus Regional and its affiliated entities and Thomas J. Tidwell ("Tidwell"). Plaintiff's claims can be divided into three broad categories: claims arising from Columbus Regional's purchase of the Tidwell Cancer Center; claims arising from remuneration agreements between Columbus Regional and an independent corporation called Radiation Oncology of Columbus

2

("Radiation Oncology"); and claims arising from charges submitted for payment by employees of Columbus Regional's John B. Amos Cancer Center.

Plaintiff alleges that Columbus Regional purchased the Tidwell Cancer Center for more than fair market value to induce Tidwell to refer patients to Columbus Regional. Plaintiff contends that this arrangement violates the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and the Stark Law, 42 U.S.C. § 1395nn. Plaintiff further maintains that when Columbus Regional and Tidwell submitted claims for reimbursement to federal healthcare programs such as Medicare, Medicaid, TRICARE, and the Federal Employee Health Benefits Program (collectively, "Federal Healthcare Programs"), they falsely stated that they had complied with the Anti-Kickback Statute and the Stark Law.

Plaintiff alleges that Columbus Regional had remuneration relationships with Radiation Oncology that violated the Anti-Kickback Statute and the Stark Law because the agreements, including physician compensation arrangements, were not commercially reasonable and were designed to induce referrals to Columbus Regional. Plaintiff contends that when Columbus Regional submitted claims for payment to Federal Healthcare Programs based on services rendered to patients referred by Radiation Oncology physicians to Columbus Regional, Columbus

Regional falsely stated that it was in compliance with the Anti-Kickback Statute and the Stark Law.

Plaintiff also alleges that employees of the John B. Amos Cancer Center engaged in improper billing practices that resulted in false claims being submitted for payment by Federal Healthcare Programs.

To establish the False Claims Act claims, Plaintiff must prove that Defendants knowingly submitted false claims with the intent to violate the law.  31 U.S.C. § 3729(a).  Defendants contend that they did not knowingly violate the law.  Columbus Regional intends to offer evidence at trial that it believed its conduct was lawful.  Columbus Regional does not assert an "advice of counsel" defense, and it does not intend to rely on communication with its attorneys in support of its defense.[1] Plaintiff nevertheless insists that by taking the position that Columbus Regional believed its conduct was lawful, Columbus Regional waived the attorney-client privilege as to any communications that relate to the legality of the transactions that Plaintiff alleges violate the False Claims Act, Anti-Kickback Statute, and Stark Law.  Columbus Regional responds that it did not waive the attorney client privilege because (1) it is not relying on an advice of counsel defense, (2) it is not

---

[1] Columbus Regional reserves the right to assert an advice of counsel defense if the Court grants the pending motion to compel.

4

relying on any communications with its attorneys, (3) it has not affirmatively injected the lawfulness of its conduct into the litigation but is simply denying Plaintiff's allegations that its conduct was unlawful, and (4) traditional implied attorney-client waiver principles should be narrowly construed in this case because the healthcare industry is highly regulated and subject to complex legal compliance, which requires regular attorney-client consultation.

Columbus Regional raises important issues regarding the waiver of attorney-client privilege and the implications of finding waiver under the circumstances presented here.  But all of its arguments, except its proposal for a healthcare industry/False Claims Act exception to attorney-client waiver, have clearly been rejected by the Eleventh Circuit Court of Appeals in the seminal and only published Eleventh Circuit opinion on this issue—*Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386 (11th Cir. 1994).  Moreover, the Court finds no legal justification under existing precedent for a special "healthcare industry exception" to the waiver of attorney-client privilege.  It is apparent that Columbus Regional's frustration is with the holding and rationale of *Cox,* which this Court is duty bound to follow.

In *Cox,* the Eleventh Circuit held that when a defendant affirmatively asserts a good faith belief that its conduct was

5

lawful, it injects the issue of its knowledge of the law into the case and thereby waives the attorney-client privilege. *Cox,* 17 F.3d at 1419.[2] Columbus Regional clearly intends to assert affirmatively that it had a good faith belief that it complied with the Anti-Kickback Statute, the Stark Law, and the False Claims Act.  Thus, Columbus Regional injected its belief as to the lawfulness of its conduct into the case and waived its attorney-client privilege as to communications relating to the legality of the transactions that form the basis of Plaintiff's claims.

Notwithstanding counsel's impressive attempt to distinguish *Cox,* it simply cannot be done.  In *Cox,* union members sued their union and employer under various theories, including the civil provision of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), alleging that the union and employer had violated an anti-bribery law when the employer enhanced the pension benefits of the union representatives who negotiated a union contract on behalf of the union members.  The employees alleged that the special pension enhancements for the union negotiators were given in exchange for concessions by the negotiators that resulted in a financial windfall to the

---

[2] At the hearing on the pending motion, Plaintiff's counsel contended that the waiver found in *Cox* was not classic "implied waiver." Although it appears to this Court that the Court of Appeals in *Cox* considered the waiver it found there to be a type of "implied waiver," this Court will refer to this type of waiver more specifically as "*Cox* waiver."

6

employer at the expense of union employees. The employer took the position that its conduct was lawful. The district court found that by taking this position, the employer waived the attorney-client privilege. To explain its rationale in affirming the district court, the Eleventh Circuit emphasized what the district court had found:

> Although [the employer] has denied any intent to assert a defense of advice of counsel or to rely on any privileged attorney-client communications in its defense, the district court observed that [the employer's] defense necessarily implicates all of the information at its disposal when it made the decision to change the leave of absence policy and later, to rescind the change. Reasoning that it would be inequitable to allow [the employer] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law, the district court held that [the employer] waived the attorney-client privilege with regard to such communications.

*Cox*, 17 F.3d at 1418 (internal quotation marks omitted).

The Court of Appeals acknowledged, and then ultimately rejected, the argument asserted by the employer in *Cox*:

> [The employer] argues that it was the plaintiffs who injected the issue of [the employer's] 'state of mind' into the case by including allegations of intentional, criminal wrongdoing in their complaint. Because . . . the criminal statute that the plaintiffs claim [the employer] violated contains a component of 'willfulness,' [the employer] argues that it has merely denied the plaintiffs' allegations, and that a mere denial of *mens rea* should not constitute waiver of the attorney-client privilege.

*Id.*

7

Columbus Regional makes the same argument here. It does not intend to raise an advice of counsel defense. It does not intend to rely on attorney-client communications. It simply denies that it knowingly and intentionally violated the law, and it wants to explain why it believed its conduct was lawful. The Court of Appeals rejected this argument in *Cox*, and this Court must do so here. As the Eleventh Circuit explained in *Cox*, "the attorney-client privilege was intended as a shield, not a sword. [The employer] waives the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications." *Id.* at 1418-19 (citations omitted) (internal quotation marks omitted). The Eleventh Circuit explained that a "defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way." *Id.* at 1419. The fact that the employer "affirmatively assert[ed] that it believed that its [conduct] was legal . . . injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege." *Id. Cox* is binding precedent and indistinguishable from the present case insofar as attorney-client waiver is concerned.

Columbus Regional raises two arguably unique issues here—one that was mentioned in dicta in *Cox* and one that was never addressed there. First, Columbus Regional latches onto dicta

8

suggesting that if a defendant merely denies the essential elements of the plaintiff's claim, the defendant has not affirmatively injected the lawfulness of its conduct into the litigation and thus *Cox* waiver does not apply.  This dicta arose from the Eleventh Circuit's analysis of the Second Circuit's decision in *United States v. Bilzerian,* 926 F.2d 1285 (2d Cir. 1991).  In *Bilzerian,* which involved a criminal prosecution for securities fraud, the Second Circuit held that the defendant had not been deprived of the right to deny criminal intent when the district court ruled that if he testified that he believed in good faith that he complied with the law, he would waive attorney client privilege with respect to any communications with his counsel regarding the legality of his conduct.  The Eleventh Circuit in *Cox*, finding *Bilzerian* "instructive," stated that the defendant in *Cox* similarly "could have denied criminal intent without affirmatively asserting that it believed that its [conduct] was legal," suggesting that mere denial would not result in waiver.  *Cox*, 17 F.3d at 1419.  Columbus Regional, relying on this dicta, argues that it simply seeks to deny that it knowingly and intentionally violated the Anti-Kickback Statute and Stark Law, and thus cannot be liable under the False Claims Act.  But Columbus Regional intends to do more than merely deny the essential elements of Plaintiff's claim. Columbus Regional does not plan simply to argue that Plaintiff

9

failed to carry his burden of proof. Columbus Regional understandably intends to explain fully why its conduct was not knowingly and intentionally unlawful. *Cox* is clear that this type of assertion goes "beyond mere denial." *Id.* By making such an assertion, Columbus Regional waives the attorney-client privilege as to any communications that relate to the legality of the transactions at issue in this action.

In an argument not considered by the Court of Appeals in *Cox,* Columbus Regional attempts to carve out a special exception to *Cox* waiver for False Claims Act claims arising from alleged healthcare fraud. Columbus Regional maintains that *Cox* waiver should not be applied here because the healthcare industry is highly regulated and uniquely dependent on regular and candid communication with attorneys. And if these communications are at risk of subsequent disclosure, the benefits associated with candid and open attorney-client communications will be lost. Although certain policy considerations may support this argument, a fair reading of *Cox* does not. Any exceptions to *Cox* must be made by the Court of Appeals and not a district judge.

Based on the foregoing, Plaintiff's Motion to Compel (ECF No. 61) is granted as follows. Columbus Regional shall produce all communications between it and its attorneys relating to whether the Tidwell transaction and the remuneration agreements with Radiation Oncology would comply with the Anti-Kickback

10

Statute, the Stark Law, or any regulation related to these statutes. For the Tidwell transaction, the applicable period shall be up to and including the final consummation of the transaction. For the agreements between Columbus Regional and Radiation Oncology, the applicable period shall include the original agreements and any renewals up through May 10, 2013, which is the date that Plaintiff filed his Amended Complaint in this action.

Within seven days of today's order, the parties shall present a jointly proposed scheduling order to the Court that schedules the remaining discovery and pretrial proceedings so that the last reply brief on any dispositive motion shall be filed by March 13, 2015, the final pretrial conference is held on May 20, 2015, and the trial shall commence on July 13, 2015.

IT IS SO ORDERED, this 29th day of August, 2014.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE